# Committee Approval Provision in the Simpson-Mazzoli Immigration Bill

The provision in the Simpson-Mazzoli immigration bill, which gives the House and Senate Judiciary Committees power to dispense with certain otherwise applicable statutory requirements for an employment eligibility system, is unconstitutional, whether viewed as allowing a congressional committee to exercise delegated executive power, or as authorizing a legislative act without the necessary requirements of bicameralism and presentation to the President

July 15, 1982

## MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

This memorandum addresses the question whether the committee approval provision in the Simpson-Mazzoli immigration bill comes within the class of so-called "legislative veto" provisions to which the Department of Justice objects on constitutional grounds. We believe that it does, for reasons set forth in this memorandum.

The relevant provision is § 101(c) of S. 2222, which provides in pertinent part as follows:

> (c)(1) Within three years after the date of the enactment of this section, the President shall implement such changes in or additions to the requirements of subsection (b) [which deals with eligibility for employment] as may be necessary to establish a secure system to determine employment eligibility in the United States, which system shall conform to the requirements of paragraph (2).

> (2) Such system shall be designed in a manner so that—
> (A) the system will reliably determine that a person with the identity claimed by an employee or prospective employee is eligible to work, and that the employee or prospective employee is not claiming the identity of another individual;

> (B) if the system requires an examination by an employer of any document, such document must be in a form which is resistant to counterfeiting and tampering, *unless the President and the Judiciary Committees of the Congress have determined that such form is unnecessary to the reliability of the system* . . . .

449

S. 2222, *reprinted in* S. Rep. No. 485, 97th Cong., 2d Sess. 32 (1982) (emphasis added). The italicized language contains the committee approval mechanism. The President is directed by subsection (c)(1) to "implement such changes in or additions to the requirements" of subsection (b) "as may be necessary to establish a secure system to determine employment eligibility in the United States . . . ." The system "shall conform to the requirements of paragraph (2)," which includes the committee approval mechanism. In particular, if the system requires an examination by an employer of any document, such document "must be in a form which is resistant to counterfeiting and tampering, *unless the President and the Judiciary Committees of the Congress have determined that such form is unnecessary to the reliability of the system . . . .*" (emphasis added). We interpret this language to mean that so long as the system requires an employer to look at any document, the document must be tamper-proof unless there is, in effect, agreement between the President and the House and Senate Judiciary Committees that such tamper-proof requirements are not needed to assure a reliable system.

When the provision is so interpreted, it purports to allow the Judiciary Committees to exercise delegated power under the statute. The Judiciary Committees would be given power to decide whether or not a tamper-proof system of documentation will or will not be required. If the President were to determine that tamper-proof requirements were unnecessary in any particular instance, he nevertheless would have to implement such requirements if the Judiciary Committees did not agree with him. The exercise by the Committees of this kind of governmental power, as an analytical matter, is necessarily either an executive or a legislative action for constitutional purposes. (We believe that it would clearly not be a judicial action, for it constitutes the exercise of delegated power to establish what the law will be, not the adjudication of a case or controversy on particular facts.) This being so, the question is whether the Judiciary Committees may be authorized by statute to play the role in the execution of this bill contemplated in subsection (c)(2)(B). The answer, in our view, is no.

Assuming that the exercise of such authority by the Judiciary Committees were sought to be justified on the ground that it constitutes an appropriate exercise of Article I legislative power, the exercise of such power must follow a constitutionally prescribed procedure. The Constitution plainly bars Congress from assigning to one or more of its committees alone the authority to exercise legislative power by adopting measures intended to have legal effect outside the Legislative Branch. Such lawmaking power may be accomplished only by the combined action of both Houses of Congress and the President, or if there is a presidential veto, by two-thirds of both Houses of Congress.

Article I, § 1 of the Constitution vests "[a]ll legislative powers herein granted" "in a Congress of the United States, which shall consist of a Senate and House of Representatives." The legislative power granted by the Constitution is "the authority to make laws," *Buckley* v. *Valeo*, 424 U.S. 1, 139 (1976), quoting *Springer* v. *Philippine Islands*, 277 U.S. 189, 202 (1928). Alexander Hamilton emphasized this basic point when asking rhetorically: "What is a legislative

450

power but a power of making Laws? What are the *means* to execute a legislative power but laws?" *The Federalist* No. 33 (A. Hamilton), at 204–205 (J. Cooke ed. 1961) (emphasis in original).

The procedure for passing laws, whether called bills or resolutions or votes before passage, is set forth in Article I, § 7, Clauses 2 & 3. Clause 2 provides in pertinent part:

> Every Bill which shall have passed the House of Representatives and the Senate, shall, before it becomes a Law, be presented to the President of the United States; if he approve he shall sign it, but if not he shall return it, with his Objections to that House in which it shall have originated . . . .

If the President disapproves the bill, "it shall become a Law" only if two-thirds of both Houses of Congress override the disapproval.

If Clause 2 appeared alone in the Constitution, it could be argued that the requirements of bicameral passage of a legislative measure and presentation to the President could be evaded by using some mechanism other than a "Bill," such as, for instance, a "resolution" or a committee "vote" or determination such as contemplated by the present bill that is not cast in terms of any formal procedure. This possibility was foreseen by the Framers. As a result, Clause 3 was added, which provides:

> Every Order, Resolution, or Vote to which the Concurrence of the Senate and House of Representatives may be necessary (except on a question of Adjournment) shall be presented to the President of the United States; and before the Same shall take Effect, shall be approved by him, or being disapproved by him, shall be repassed by two thirds of the Senate and House of Representatives, according to the Rules and Limitations prescribed in the case of a Bill.

The "Concurrence" of the Senate and House of Representatives is "necessary" under the Constitution whenever Congress attempts to exercise the legislative power granted by Article I. Accordingly, when the Judiciary Committees seek to determine whether a tamper-proof system of identification will or will not be required, they are exercising legislative powers. Such exercise of authority is subject to the bicameralism and presentation requirements if that exercise is to be legally binding.

We note that the Senate Judiciary Committee interpreted Article I, § 7, Clause 3 in a manner consistent with our analysis in a thorough historical study conducted in 1897. The Committee concluded at that time that the concurrence of both Houses and presentation to the President are required with respect to all resolutions that "contain matter which is properly to be regarded as legislative in its character and effect." S. Rep. No. 1335, 54th Cong., 2d Sess. 8 (1897).

Furthermore, the principles we have put forward have been embraced by the United States Court of Appeals for the District of Columbia Circuit in *Consumer Energy Council of America* v. *Federal Energy Regulatory Commission,* 673 F.2d

425 (D.C. Cir. 1982). In this case, the court, without dissent, ruled that a provision of the Natural Gas Policy Act of 1978 purporting to authorize one House of Congress to invalidate an incremental pricing regulation promulgated by FERC was unconstitutional. As the court noted, "[t]he primary basis of this holding is that the one-house veto violates Article I, Section 7, both by preventing the President from exercising his veto power and by permitting legislative action by only one house of Congress." *Id.* at 448. *See also Chadha* v. *Immigration and Naturalization Service,* 634 F.2d 408, 433 (9th Cir. 1980) ("Having vested all legislative power in the Congress, the framers deemed it necessary not only to design checks on that power by means of the other branches, but also to use the internal checks of bicameralism.").[1]

We understood that a question about the foregoing analysis has been raised on the ground that the committee approval mechanism in the Simpson-Mazzoli bill would purport to empower the Judiciary Committees to eliminate the tamper-proof requirement, rather than to impose a new requirement. The suggestion appears to be that whenever Congress seeks to authorize its committees to excuse the Executive Branch from an otherwise-applicable legal requirement, rather than to impose a new legal constraint, Congress may do so as a constitutional matter without complying with Article I, § 7, Clauses 2 & 3.

We believe that this suggestion finds no support whatsoever in the Constitution's text, history or purposes. It makes no difference whether the committee action would seek to add new requirements, or to repeal, withdraw or waive old restrictions. So long as the committee action constitutes an exercise of legislative power, it is invalid unless it conforms to the constitutionally prescribed procedures in Article I, § 7, Clauses 2 & 3. Congress surely may block the execution of any law by the President if it chooses to do so. However, it is our view that in order to do so, Congress must pass plenary legislation subject to the President's veto.

The underlying legal deficiency of the foregoing suggestion is illustrated by extending the argument to its rational conclusion. Under the suggested logic, it would be acceptable, for instance, for a statute to require the Executive Branch to halt all programs and activities presently authorized, unless the Judiciary Committees approve (along with the Executive Branch) of the continuation of a given program or activity. This kind of realignment of power in the national government, albeit extreme, is different only in degree from the rearrangement contemplated by the committee approval provision in the Simpson-Mazzoli bill. Such a statutory arrangement would purport to give to the Judiciary Committees the power to decide whether legal requirements will or will not be imposed on (and rights conferred on) the Executive Branch or, indeed, private persons. The exercise of such power is consummately a legislative decision. As we have discussed, under our Constitution such a decision may be made only after compliance with the plenary legislative process mandated by Article I, § 7, Clauses 2 & 3.

---

[1] In *Chadha,* the court of appeals held unconstitutional a provision of the Immigration and Nationality Act that purports to allow one House of Congress to overturn the decision of the Attorney General suspending the deportation of an alien. The case is presently pending before the Supreme Court, having been recently set down for reargument during the coming term of the Court

452

In addition, the attempt to confer on committees of Congress power to determine whether or not tamper-proof documentation will be necessary "to the reliability of the system" also may be seen as an attempt to confer on congressional committees executive power. Executive power is the power to execute the laws. As Chief Justice Marshall observed, "[t]he difference between the departments undoubtedly is, that the legislature makes, the executive executes, and the judiciary construes the law." *Wayman* v. *Southard,* 23 U.S. (10 Wheat.) 1, 46 (1825). *See also Buckley* v. *Valeo,* 424 U.S. 1, 139 (1976), quoting *Springer* v. *Philippine Islands,* 277 U.S. 189, 202 (1928). Under the principle of the separation of powers—which is one of the basic principles underlying the Constitution—it is unconstitutional as a substantive matter to confer on a Legislative Branch entity, such as a committee of Congress, power to execute the laws. As the Supreme Court wrote in *Buckley* v. *Valeo, supra,* 424 U.S. at 121–122, quoting *Hampton & Co.* v. *United States,* 276 U.S. 394, 406 (1928), "'it is a breach of the National fundamental law if Congress . . . by law attempts to invest itself or its members with either executive power or judicial power.'"

The substantive unconstitutionality of attempting to vest in the Judiciary Committees power to determine whether or not tamper-proof documentation will be required follows directly, in our view, from the Supreme Court's decision in *Buckley, supra*. In that case, the Court held unconstitutional a statutory provision authorizing the President *pro tempore* of the Senate and the Speaker of the House of Representatives to appoint members of the Federal Election Commission. *See* 424 U.S. at 109–41. In discussing this matter, the Court extensively reviewed the doctrine of separation of powers and, in particular, its expression in the Appointments Clause, Article II, § 2, Clause 2. The Court concluded that any "significant governmental duty . . . pursuant to a public law" (*id.* at 141)—which includes promulgating regulations, issuing advisory opinions, determining eligibility for benefits and otherwise executing the law—must be exercised by "Officers of the United States" appointed by the President or otherwise in conformity with the Appointments Clause. Such duties, the Court held, cannot be exercised by officials appointed by Congress. *Id.* at 138–141; *see also id.* at 125–126.

Under the Simpson-Mazzoli bill, Congress would purport to authorize the Judiciary Committees to make the determination that a tamper-proof documentation system is or is not necessary for the reliability of the Nation's employment eligibility system. Such exercise of authority plainly constitutes the exercise of significant governmental duties that involve the discharge of executive power. That kind of action, as *Buckley* held, can be exercised only by officers of the Executive Branch, not by members of the Judiciary Committees.

The underlying substantive defect of the attempt to confer on the Judiciary Committees power to determine whether or not a tamper-proof identification system will be required is essentially similar to the defect found to exist by the Court of Appeals for the Ninth Circuit in *Chadha* v. *Immigration and Naturalization Service, supra,* in a provision allowing one House of Congress to overturn a decision to suspend an alien's deportation. In both cases, the separation of powers principle is violated by attempts to vest executive decisionmaking authority in a

453

Legislative Branch entity. The effect of such a scheme is to render the efforts of the Executive Branch faithfully to execute the laws entirely tentative and conditional on action—whether by means of disapproval or approval—by legislative authorities. The *Chadha* court summarized as follows its rejection of such legislative provisions on the basis of the separation of powers principle:

> We cannot accept that definite, uniform, and sensible criteria governing the conferral of government burdens and benefits on individuals should be replaced by a species of non-legislation, wherein the Executive branch becomes a sort of referee in making an initial determination which has no independent force or validity, even after review and approval by the Judiciary, save and except for the exercise of final control by the unfettered discretion of Congress as to each case. . . . In such a world, the Executive's duty of faithful execution of the laws becomes meaningless, as the law to be executed in a given case remains tentative until after action by the Executive has ceased.

634 F.2d at 435–36. In response to the argument that the Necessary and Proper Clause of Article I, § 8, should permit Congress to reserve to itself power to determine whether a requirement will or will not be imposed on the Executive Branch, *Chadha* noted that this Clause "authorizes Congress to 'make all laws,' not to exercise power in any way it deems convenient. That a power is clearly committed to Congress does not sustain an unconstitutional form in the exercise of the power." *Id.* at 433.

In sum, if the committee approval mechanism in the Simpson-Mazzoli bill is sought to be justified as an exercise of Congress' Article I power, it is invalid because it does not contemplate the exercise of legislative authority by means of the procedures set forth in Article I, § 7, Clauses 2 & 3. In addition, to the extent that the committee approval mechanism would authorize the Judiciary Committees to determine when a tamper-proof system is necessary and when it is not, the provision would seek to authorize the Committees to act as if they were Executive Branch officials, which they are not. Thus, the provision also violates the separation of powers principle.

We note in closing that the procedural and substantive limitations discussed in this memorandum are not mere formalities or empty legalisms that are being employed to seek a result desired on other grounds. To the contrary, these principles lie at the core of our nation's constitutional scheme. They could not be more fundamental. As a result, since they apply directly to the committee approval provision in the Simpson-Mazzoli bill, we are constrained to object strongly to that provision.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*
